IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| REGINA B., § | |
| PLAINTIFF, § | |
| § | |
| V. § | CASE NO. 3:17-CV-2390-BK |
| § | |
| NANCY A. BERRYHILL, § | |
| COMMISSIONER, § | |
| SOCIAL SECURITY ADMINISTRATION § | |
| DEFENDANT. § | |

**MEMORANDUM OPINION**

The parties have consented to proceed before the undersigned United States magistrate judge. Doc. 21. Pending before the Court are the parties' cross-motions for summary judgment. Doc. 19; Doc. 22. For the reasons stated herein, Plaintiff's *Motion for Summary Judgment*, Doc. 19, is **DENIED**, Defendant's *Motion for Summary Judgment*, Doc. 22, is **GRANTED**, and the Commissioner's decision is **AFFIRMED.**

**I. BACKGROUND**

A. Procedural History

Plaintiff seeks judicial review of a final decision by the Commissioner denying her application for period of disability and disability insurance benefits under the Social Security Act ("the Act"). Doc. 1 at 1. Plaintiff filed for benefits in April of 2014, claiming that she became disabled in May of 2012 due to a broken right ankle and "lower back problems." Doc. 1 at 1; Doc. 14-1 at 208, 212. Plaintiff's claims were denied at all administrative levels, and she now appeals to this Court pursuant to 42 U.S.C. § 405(g). Doc. 1 at 1; Doc. 14-1 at 5, 11, 14.

B. Factual Background

Plaintiff was 48 years old on her alleged disability onset date and has been unemployed since November 2011. Doc. 14-1 at 208, 212. She completed two years of college and worked in remittance management for an insurance company for over 20 years. Doc. 14-1 at 213.

*Medical Records*

In May 2012, Plaintiff was treated at the Dallas Regional Medical Center after she "fell off a retaining wall." Doc. 14-1 at 286. Plaintiff was diagnosed with a "closed trimalleolar fracture dislocation of the right ankle," which was reduced and splinted. Doc. 14-1 at 286; Doc. 14-1 at 298. X-rays taken two days later showed "a substantial improvement" of the fracture/dislocation. Doc. 14-1 at 300. The following month, Plaintiff was seen at Baylor University Medical Center with complaints of ankle pain. Doc. 14-1 at 315. Dr. Amanda Bruggman observed that Plaintiff had decreased range of motion in her right ankle due to pain, and she told Plaintiff to return in two or three days for a follow-up on her complaints. Doc. 14-1 at 315-16. A few days later, Dr. Randall Lais performed surgery on Plaintiff's right ankle: an "[o]pen reduction internal fixation" with "[s]crew and plate insertion." Doc. 14-1 at 310; Doc. 14-1 at 319-20.

Two years later, in June 2014, Plaintiff underwent a consultative examination by Dr. David Ukoha, M.D. She reported that after her ankle surgery, she told her surgeon that the screw and plate were loose and causing her pain, but "nothing was done." Doc. 14-1 at 341. Plaintiff also reported that her back pain was "aggravated by activities of daily living and relieved by taking medications." Doc. 14-1 at 341. Dr. Ukoha noted that Plaintiff (1) was "alert and oriented to time, place, and person," and (2) had "mild difficulty squatting, hopping, tandem walking, toe walking, and heel walking due to right ankle pain and low back pain." Doc. 14-1 at

343. He observed a surgical scar on Plaintiff's right ankle and "decreased range of motion," but "no obvious swelling or sign of trauma." Doc. 14-1 at 343. His spinal examination revealed "normal spinal processes[,] nontender to touch," with "no kyphosis or scoliosis," but a "decreased range of [spinal] motion due to pain in all angles." *Id*. Ultimately, Dr. Ukoha concluded that Plaintiff had chronic nonspecific low back pain, degenerative joint disease of the lumbar spine, and chronic right ankle pain with a history of closed facture right ankle status post open reduction and internal fixation. Doc. 14-1 at 344.

In March 2015, Dr. Joseph Moran reported that an x-ray of Plaintiff's right ankle showed no "abnormal lucency along the surgical hardware or screw fracture" and no "evidence for hardware loosening or infection." Doc. 14-1 at 434. According to Dr. Larry Johnson, x-rays of Plaintiff's ankle taken the following month showed "mild degenerative hypertrophy and joint space narrowing at the ankle joint," but no abnormality in the soft tissue. Doc. 14-1 at 406.[1] Later that month, Dr. Johnson also noted that Plaintiff's spinal/lumbar x-rays were normal. Doc. 14-1 at 405.

In May 2015, three days after she was rear-ended in a motor vehicle collision, Plaintiff saw Dr. Arash Bidgoli at the Comprehensive Spine Center of Dallas ("CSCD"), and complained of neck, back and shoulder pain. Doc. 14-1 at 380-81, 386. Her medical history taken at that time was negative for, *inter alia*, back and joint pain, and a physical examination showed no swelling in her extremities and "a full active range of motion." Doc. 14-1 at 387-89. X-rays of Plaintiff's cervical spine taken about a week after the accident showed "no fracture or

---

[1] In June 2015, Plaintiff requested that Dr. Johnson remove the hardware inserted into her ankle. Doc. 14-1 at 400. Dr. Johnson did not remove the hardware then but did do so a couple of months later. Doc. 14-1 at 396; Doc. 14-1 at 400.
.

subluxation," "no instability on flexion and extension views," and only "some neural foraminal narrowing." Doc. 14-1 at 359.

In June 2015, Plaintiff reported to CSCD complaining again of neck and back pain. Doc. 14-1 at 375. Dr. Arash Bidgoli observed that Plaintiff had "[n]o swelling in bilateral upper and lower extremities" and was "able to stand on heel and toes and perform tandem gait." Doc. 14-1 at 377. Plaintiff's cervical and lumbar exams revealed "full active range of motion." Doc. 14-1 at 378. Her straight leg raise was negative for both legs, Doc. 14-1 at 378, and her "Dorsum Foot" and "Lateral/Sole Foot" were normal. Doc. 14-1 at 378-79. Dr. Bidgoli concluded that Plaintiff had "[b]ilateral trapezius and cervical paraspinal muscle spasms, left worse than right," "[a]xial neck pain," "[b]ilateral lumbar paraspinal muscle spasms," and "[a]xial low back pain." Doc. 14-1 at 379.

The following month, Dr. Scott Farley of the CSCD noted that Plaintiff "[was] much improved since she [was] given prescriptions and continue[d] therapy," and "no longer struggle[d] on day-to-day basis with her pain." Doc. 14-1 at 391. Dr. Farley also noted that Plaintiff had no swelling in her bilateral upper and lower extremities, could "stand on heels and toes and perform tandem gait," and had "full range of motion in all planes to include flexion, extension, side bending and rotation." Doc. 14-1 at 393-4. He diagnosed her with neck and back muscle spasms. Doc. 14-1 at 395.

In March 2016, Dr. Michael T. Morris performed a consultative psychological examination of Plaintiff. Doc. 14-1 at 442. Dr. Morris findings included that Plaintiff was capable of making "sound, reasoned and responsible decisions." Doc. 14-1 at 448. He also concluded that Plaintiff could "understand, carry out, and remember one- and two-step

instructions and complex instructions," but "would likely be limited in her ability to deal with normal pressures in a competitive work setting." Doc. 14-1 at 449.

*Administrative Hearing*

Plaintiff appeared at a hearing before the Administrative Law Judge ("ALJ") in February 2016. Doc. 14-1 at 40. Plaintiff testified that on a typical day, she arose at 6:15 A.M., gave medications to her foster children and, after the children left for school, she "lay[] around the house really not doing a lot." Doc. 14-1 at 55. She explained that her mother helped her with the children "three or four times out of a week," but that she (Plaintiff) prepared some of the meals and took the children to all their medical appointments. Doc. 14-1 at 55. Plaintiff also testified that the foster children helped her with household chores and grocery shopping, Doc. 14-1 at 56, but that she drives, Doc. 14-1 at 46, attends church every Sunday, Doc. 14-1 at 57, and is responsible for paying the household bills. Doc. 14-1 at 56.

Plaintiff testified that she suffers from depression, and that when she is depressed, her concentration level and mood are "low," and she feels hopeless. Doc. 14-1 at 54. She also stated that she suffers from mood swings, anxiety, and panic attacks that cause her to sweat and "just quit talking." Doc. 14-1 at 54; Doc. 14-1 at 62-3. Plaintiff never sought treatment or counseling from a psychologist or other mental health specialist; her only treatment was antidepressants prescribed by Dr. Moran. Doc. 14-1 at 51.

A Vocational Expert ("VE") testified that, *inter alia*, jobs exist in the national economy for a claimant of Plaintiff's age, education and work experience, who is limited to the light exertional level and can lift/carry, push and pull up to 20 pounds occasionally and ten pounds frequently; sit, stand, and walk six out of eight hours; occasionally climb ropes, ladders, scaffolds, ramps, and stairs; occasionally bend, balance, stoop, kneel, crouch, and crawl;

understand, remember, and carry out detailed but not complex instructions, make decisions, concentrate for standard periods, interact with others, and respond to routine changes in a workplace setting. According to the VE, such an individual can perform the "full range of light unskilled" work—including cashier, cleaner, and assembler, as well as Plaintiff's past relevant work in remittance management. Doc. 14-1 at 67-70. The VE also testified that if such a claimant were "off task 20 percent of the time," however, she would be unable to perform her past work or any other work. Doc. 14-1 at 70.

After the ALJ received the report of Dr. Morris's consultative psychological examination of Plaintiff, a supplemental administrative hearing was held in June 2016, at which a different VE was the only witness. Doc. 14-1 at 32. The second VE confirmed that Plaintiff's past relevant work in remittance management ("mail sorter") is classified as "light." Doc. 14-1 at 33. In response to the same RFC hypothetical outlined above, with the additional limitation of "frequent contact with supervisors and occasional incidental contact with coworkers and the general public," the second VE likewise opined that an individual could perform Plaintiff's past work and other light, unskilled jobs, such as screwdriver operator and cleaner. Doc. 14-1 at 34-35. However, just as before, the second VE stated that if such claimant was "limited in her ability to deal with normal pressures in a competitive work setting and, thus, off task 20 percent of the time," she would be unable to perform any work. Doc. 14-1 at 35-36.

C. The ALJ's Findings

The ALJ found that Plaintiff had the severe impairments of degenerative disc disease of the cervical and lumbar spine, unspecified anxiety disorder, major depressive disorder, recurrent, moderate, and status-post right ankle fracture, but that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any Listing, "most specifically

6

Listing 1.02 and 1.04." Doc. 14-1 at 16-17. The ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work, occasionally lift/carry/push/pull up to 20 pounds, frequently lift/carry/push/pull up to 10 pounds, sit/stand/walk for six hours of an eight-hour day, and occasionally climb, balance, stoop, kneel, crouch, and crawl. Doc. 14-1 at 18. The ALJ also found that Plaintiff had the ability to "understand, remember, and carry out detailed but not complex instructions, make decisions, concentrate for extended periods, and respond to changes in routine work settings," and was able to have "frequent contact with supervisors," but only "occasional, incidental contact with coworkers and the general public." Doc. 14-1 at 18. Based on this RFC, the ALJ concluded that Plaintiff is "capable of performing her past relevant work in remittance management" and, thus, was not disabled under the Act. Doc. 14-1 at 23.

## II.   APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, she is "[unable] to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least twelve months. 42 U.S.C. § 423(d)(1)(A). In determining whether an individual is disabled, the Commissioner uses a five-step inquiry: (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the Regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing his past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and RFC must be considered to determine if any other work can be

7

performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (per curium) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b)-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* If the claimant satisfies her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Grid Rules, vocational expert testimony, or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's decision is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan*, 38 F.3d at 236; 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett*, 67 F.3d at 564. Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

### III. ANALYSIS

The questions presented are:

> A. Whether the ALJ committed reversible error in failing to discuss the evidence or explain why Plaintiff's impairments do not meet or equal the criteria in Listed Impairment 1.04(A). Doc. 19-1 at 9.

8

> B. Whether the ALJ failed to adequately account for all of Plaintiff's impairments in the RFC. Doc. 19-1 at 13.

In considering the parties' summary judgment arguments, the Court has relied upon their assessment of and citation to the evidence of record. The Court is not under any obligation to probe the record to find supporting evidence for one side or the other. *See* FED. R. CIV. P. 56 (the movant and opponent of a motion for summary judgment must support their positions by "citing to particular parts of materials in the record"); *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (the court has no obligation under Rule 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment").

### A. ALJ's Findings as to Listed Impairments

Plaintiff argues that the ALJ's "summary statement" that listing 1.04(A) is not met or equaled, without a discussion of evidence supporting such a conclusion, was improper. Doc. 19-1 at 9. Relying on *Aulder v. Astrue*, 501 F.3d 446, 448-49 (5th Cir. 2007), Plaintiff reasons that the ALJ "is required to explain why a claimant's symptoms are not severe enough to meet the criteria of a listing." Doc. 19-1 at 9. Plaintiff concludes that since the ALJ did not do so and since the evidence shows that her impairments "are at least equal" to the criteria in listing 1.04(A), her substantial rights were "affected" and remand is required. Doc. 19-1 at 10-12.

In opposition, Defendant maintains that the ALJ "specifically stated that she analyzed [Plaintiff's] impairments under the required criteria of listing 1.04, pertaining to disorders of the back." Doc. 23 at 7. Defendant argues that this is sufficient because "[t]here is no requirement that an ALJ conduct his analysis in a formalistic fashion." Doc. 23 at 8. Furthermore, Defendant asserts that the medical evidence "supports the ALJ's findings," Doc. 23 at 9, and that while Plaintiff cites to medical records in support of her argument, the records do not demonstrate an impairment that meets the criteria of Listing 1.04A. Doc. 23 at 7-11.

9

In *Audler*, the United States Court of Appeals for the Fifth Circuit held that an ALJ committed legal error when she "summarily concluded" that a claimant's impairments were not severe enough to meet or medically equal one of the listed impairments but "did not identify the listed impairment for which [the claimant's] symptoms fail[ed] to qualify" or "provide any explanation as to how she reached the conclusion." *Audler*, 501 F.3d at 448. Noting that an ALJ was not "always required to do an exhaustive point-by-point discussion," the *Audler* panel stated that it could not "tell whether her decision [was] based on substantial evidence" because she "offered nothing to support her conclusion at this step." *Id.* (citation omitted).

"Applying *Aulder*, courts have found that even when an ALJ specifically identifies a listing at step three, he/she errs by failing to discuss the medical evidence and provide the reasons for the step three determination because such failure prevented meaningful judicial review." *Woods v. Colvin*, No. 3:14-CV-1990-B-BH, 2015 WL 5311142, at *11 (N.D. Tex. Aug. 26, 2015) (Ramirez, J.) (collecting cases). "Although it is not always necessary that an ALJ provide an exhaustive discussion of the evidence, bare conclusions, without any explanation for the results reached, may make meaningful judicial review of the Commissioner's final decision impossible." *Id.* (quoting *Inge ex rel. D.J.I. v. Astrue*, No. 7:09-CV-95-O, 2010 WL 2473835, at *9 (N.D. Tex. May 13, 2010) (Sanderson, J.)).

Here, at step three, the ALJ found that Plaintiff's impairments did not meet the criteria of any listed impairments, "most specifically Listing 1.02 and 1.04." Doc. 14-1 at 17. The ALJ did not, however, "cite to evidence and provide reasons in order to permit meaningful judicial

10

review."[2]  *Woods*, 2015 WL 5311142, at *12.  Thus, she erred. *See id*. ("The ALJ committed legal error when she failed to discuss any of the Plaintiff's medical evidence and explain how the evidence did not meet the severity criteria of Listing 1.04."); *Grays v. Colvin*, No. 3:12-CV-00138-B(BH), 2013 WL 1148584, at *11 (N.D. Tex. Mar. 19, 2013) (Boyle, J.) ("The ALJ committed legal error at step three by failing to discuss any of Plaintiff's medical evidence, including the findings and opinions of his treating physicians, as the evidence related to the issue of whether Plaintiff's degenerative disk disease met the severity criteria of Listing 1.04A.").

That notwithstanding, procedural perfection is not required as long as the claimant's substantial rights were not affected by an ALJ's error.  *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1998).  "In considering whether a step three error was harmless in *Audler*, the Fifth Circuit reviewed the evidence to determine whether the claimant had demonstrated that she satisfied all the criteria of the Listing at issue."  *Woods*, 2015 WL 5311142, at *12 (quoting *Pannell v. Astrue*, No. 3:11-CV-2385-D, 2012 WL 4341813, at *3 (N.D. Tex. Sept. 21, 2012) (Fitzwater, C.J.)).  The Court does the same here.

To meet the criteria of Listing 1.04A, the record must contain sufficient evidence of (a) "nerve root compression characterized by neutron-anatomic distribution of pain," (b) "limitation of motion of the spine," (c) "motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss," and (d) "if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)."  20 C.F.R., Pt. 404, Subpt. P, App. 1 § 1.04A.  In addition, the claimant must "demonstrate the required loss of function for a

---

[2] The ALJ only held generally that "[n]o treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment of the Listing of Impairments."  Doc. 14-1 at 17.

11

musculoskeletal impairment," and that she met Listing 1.04A's criteria over a period that has or is expected to last at least 12 months. *Woods*, 2015 WL 5311142, at *13

In this case, the evidence does not establish that Plaintiff met that criteria. Plaintiff argues that a May 2015 x-ray of her cervical spine demonstrates "nerve root compromise," Doc. 19-1 at 11, however, her medical records state otherwise. The May 2015 x-ray showed only "some neural foraminal narrowing." Doc. 14-1 at 359. Plaintiff does not explain how, nor can the Court conclude, such finding equates to "nerve root compression characterized by neutron-anatomic distribution of pain." *Woods*, 2015 WL 5311142, at *13. Plaintiff also relies on the results of a May 2015 MRI. Doc. 19-1 at 11. The MRI report, however, is devoid of any diagnosis or mention of "nerve root compression characterized by neutron-anatomic distribution of pain." *See* Doc. 14-1 at 374. Also, while it was noted during a June 2014 examination that Plaintiff's spine showed a "decreased range of motion," Doc. 14-1 at 343, June and July 2015 examinations of Plaintiff's cervical and lumbar spine showed that Plaintiff had "full active range of motion." Doc. 14-1 at 378, 393-94. Furthermore, no medical evidence indicates that Plaintiff suffered motor or reflex loss. Plaintiff cites only her subjective complaints and testimony at the hearing. Doc. 19-1 at 11. Indeed, an exam earlier that year found that Plaintiff's "Deep tendon reflexes" were "intact and symmetrical." Doc. 14-1 at 402.

Based on the foregoing, the Court cannot conclude that Plaintiff has "demonstrated that she satisfied all the criteria of the Listing at issue." *Woods*, 2015 WL 5311142, at *12. Therefore, the Court finds that the ALJ's error was harmless.

B. The ALJ's RFC Finding

An RFC is an assessment, based on all the relevant evidence, of a claimant's ability to do work on a sustained basis in an ordinary work setting despite her impairments. 20 C.F.R.

12

§§404.1545(a), 416.945(a). The RFC is the most a claimant can do despite her physical and mental impairments. *Id.* The RFC is considered by the ALJ, along with the claimant's age, education, and work experience, in determining whether a claimant can work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). In assessing a claimant's RFC, the ALJ must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not severe. SSR 96-8p, 1996 WL 374184; 20 C.F.R. §§ 404.1523, 416.923. The RFC determination falls solely to the ALJ, who alone is responsible for resolving any conflicts in the evidence. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (per curiam). A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or no contrary medical findings. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988) (per curium).

Here, Plaintiff complains, *inter alia*, that: (1) her physical impairments are more limiting than accounted for by the ALJ's RFC finding, Doc. 19-1 at 13; (2) the RFC does not consider her obesity in combination with her other impairments, Doc. 19-1 at 13, 15; and (3) the hypothetical posed to the VE(s) based on the RFC did not account for all of her physical and mental impairments, Doc. 19-1 at 18. Defendant essentially responds that "the ALJ's analysis reveals a thorough consideration of the medical evidence." Doc. 23 at 11. The Court agrees with Defendant. A review of the record evidence reveals that the ALJ's RFC finding is supported by substantial evidence.

Plaintiff's arguments that the ALJ "failed to properly accommodate [her] obesity, lower back pain and standing/walking limitations," and failed to consider Plaintiff's obesity "in combination with Plaintiff's lower back and ankle impairments," Doc. 19-1 at 17-18, are belied

13

by the record.  Doc. 19-1 at 17-18.³  The ALJ noted that the record "reflects that the claimant is mildly obese," referenced Social Security Ruling 02-1p,⁴ and acknowledged that she was required to consider Plaintiff's obesity "in determining the residual functional capacity."  Doc. 14-1 at 16.  See Gonzalez v. Commissioner of Social Sec. Admin, No. 3:10-CV-02003-O (BF), 2012 WL 1058114, at *8 (N.D. Tex. Jan. 26, 2012) (Stickney, J.) (finding that the ALJ properly considered a plaintiff's obesity and noting that "the ALJ specifically referenced SSR 02-1p").  The ALJ also discussed the health implications of obesity and noted that "obesity may limit an individual's ability to sustain activity on a regular and continuing basis during an eight-hour day, five-day week or equivalent schedule."  Doc. 14-1 at 16-17.  Moreover, the ALJ explicitly stated that such "considerations [were] taken into account in reaching the conclusions."  Doc. 14-1 at 17.

The ALJ also properly considered Plaintiff's lower back pain and standing/walking limitations.  The ALJ specifically noted that Plaintiff (1) reported pain in her back and right ankle, (2) endured pain in her ankle despite surgery, (3) had trouble getting "in and out of the tub due to balance problems," (4) cannot drive long distances because of ankle pain, (5) "limps when she walks and must wear soles in shoes to walk better," (6) "ambulates with the use of braces and crutches," and (7) endures pain that limits her ability "to perform most postural activities."

---

³ Plaintiff also argues that the ALJ failed to properly develop the record.  Doc. 19-1 at 14. Although Plaintiff does not sufficiently brief that argument, the Court finds the record to be amply developed.  Moreover, Plaintiff has not shown that she was prejudiced by any alleged failure to develop the record.  See, e.g., Brock v. Chater, 84 F.3d 726, 728 (rejecting an argument that the ALJ failed to develop the record because the plaintiff failed to establish prejudice, i.e., "point[ed] to no evidence that, had the ALJ developed the record further, would have been adduced at the hearing and that could have changed the result").

⁴ Social Security Ruling 02-1P governs the evaluation of obesity.  See SSR 02-1P, 2002 WL 34686281.

14

Doc. 14-1 at 19. The ALJ concluded, however, that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [those] symptoms [were] not entirely consistent with the medical evidence," Doc. 14-1 at 19, and, indeed, the medical records do not support Plaintiff's subjective complaints. In reaching her conclusion, the ALJ noted that at her consultative exam with Dr. Ukoha, Plaintiff reported that she "was doing well with occasional pain," "had no difficulty with self-care," "denied radiation, tingling, or paresthesia," and that medications "relieved [her] back pain." Doc. 14-1 at 20. The ALJ also considered that such an examination "revealed no clubbing, cyanosis, or edema to her extremities," that her "[c]ranial nerves, sensation, motor tone, reflexes, and muscle strength were intact," and that x-rays of "the right ankle did not reveal any acute abnormality." Doc. 14-1 at 20. The ALJ also referenced Plaintiff's visits to the CSCD, during which it was "revealed that [Plaintiff] could heel and tandem walk," that she had "full active range of motion of her extremities" with "moderate tenderness of the lumbar spine," and that her lumbar spine had "subtle if any curvature of the thoracolumbar spine." Doc. 14-1 at 20. The ALJ's opinion reflects that she also considered the results of Plaintiff's x-rays from those visits, Doc. 14-1 at 20, a follow-up with Dr. Moran at which Plaintiff reported that her back pain was "significantly less," Doc. 14-1 at 21, and the fact that Dr. Johnson surgically removed the hardware that was inserted into Plaintiff's right ankle that purportedly caused her pain. Doc. 14-1 at 21.

  Plaintiff's argument that the ALJ failed to consider her obesity in combination of her lower back and ankle impairments is equally unavailing. Doc. 19-1 at 15. As already noted, the ALJ expressly stated that she considered Plaintiff's obesity "in reaching [her] conclusions," Doc. 14-1 at 17, and that she considered "the entire record" and "all [of Plaintiff's] symptoms." Doc. 14-1 at 18.

15

Plaintiff's assertion that the ALJ did not consider Dr. Morris's opinion that "Plaintiff would be limited in her ability to deal with normal pressures in a competitive work setting," Doc. 19-1 at 18, wholly lacks foundation. The ALJ expressly considered that opinion, Doc. 14-1 at 22, but reasoned that the record establishes that Plaintiff's "conditions do not affect her ability to understand or execute instructions." Doc. 14-1 at 22. Indeed, the ALJ explicitly cited Dr. Morris's report that Plaintiff (1) "greeted the examiner with a weak and monotone voice but was otherwise cooperative," (2) "denied symptoms consistent with significant anxiety or agoraphobia," (3) "reported that her medications worked," (4) "reported a consistent work history and had no problems getting along with coworkers or supervisors," (5) performed reliably and "did not have trouble on the job," (6) had a "goal directed thought process" and was "alert and oriented with adequate attention and concentration," (7) had "capacity to make sound, reasoned, and responsible decisions," and (8) had "spelling and reading" skills that "commensurate with her education." Doc. 14-1 at 21. The ALJ also noted Plaintiff's own testimony and reports that she "does not undergo formal counselling or require emergency intervention," "medication is helpful," and "has no significant limitations in concentration and attention span." Doc. 14-1 at 22. Finally, the ALJ observed that Plaintiff "remains quite active despite her allegations of depression and anxiety," since she is "able to drive, shop, travel alone, care for three foster children, pay bills, attend church, talk on [the] phone, and attend to her personal grooming and hygiene." Doc. 14-1 at 22.

On this record, the Court finds that the ALJ's RFC assessment is supported by substantial evidence.

Finally, Plaintiff relatedly argues that the "ALJ's hypothetical question failed to incorporate all of Plaintiff's limitations." Doc. 19-1 at 18. Defendant responds that "the ALJ's hypothetical question need only reasonably incorporate the recognized limitations in the hypothetical question." Doc. 23 at 16. Defendant correctly states the law.

An ALJ's hypothetical is not defective if (1) "it incorporates reasonably all disabilities of the claimant recognized by the ALJ," and (2) "the claimant or [her] representative is afforded the opportunity to correct deficiencies in the hypothetical." *Hardman v. Colvin*, 820 F.3d 142, 148 (5th Cir. 2016). An ALJ "reasonably incorporates" a plaintiff's impairments into her hypothetical question if the question tracks the ALJ's RFC assessment and the RFC assessment is supported by substantial evidence. *See Dise v. Colvin*, 630 Fed.Appx. 322, 326 (5th Cir. 2015) (holding that because the "ALJ's question here tracked his residual functional capacity assessment," and the RFC assessment was supported by substantial evidence, the ALJ's hypothetical properly accounted for the claimant's impairments).

As detailed *supra*, the ALJ's RFC assessment is supported by substantial evidence. Moreover, the ALJ's RFC determination corresponds precisely to the ALJ's relevant hypothetical questions at the hearings. *See* Doc. 14-1 at 18, 35, 69-70. Here, just as in *Dise*, the "ALJ's question[s] here tracked [her] residual functional capacity assessment." *Dise*, 630 Fed. Appx. at 326.

Accordingly, the ALJ's hypothetical questions to the VE were not defective.

### C. CONCLUSION

For the foregoing reasons, Plaintiff's *Motion for Summary Judgment*, Doc. 19, is **DENIED**, Defendant's *Motion for Summary Judgment*, Doc. 22, is **GRANTED**, and the Commissioner's decision is **AFFIRMED.**

**SO ORDERED.**

March 22, 2019.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE